## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| MATTHEW A. COLLINS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  **Civil Action No. 2:24-cv-629** |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| SERVE:  C T Corporation System, Reg. Agent | ) |
| 4701 Cox Road, Suite 285 | ) |
| Glen Allen, Virginia 23060 | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| SERVE:  Corporation Service Company, Reg. Agent | ) |
| 100 Shockoe Slip | ) |
| 2nd Floor | ) |
| Richmond, Virginia 23219 | ) |
| | ) |
| TRANS UNION, LLC, | ) |
| SERVE:  Corporation Service Company, Reg. Agent | ) |
| 100 Shockoe Slip | ) |
| 2nd Floor | ) |
| Richmond, Virginia 23219 | ) |
| | ) |
| **and** | ) |
| | ) |
| TRUIST BANK | ) |
| SERVE:  Corporation Service Company, Reg. Agent | ) |
| 100 Shockoe Slip | ) |
| 2nd Floor | ) |
| Richmond, Virginia 23219 | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Matthew A. Collins, by counsel, and for his complaint against

Defendants, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services,

LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Truist Bank ("Truist"), he states as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, as well as costs and attorneys' fees brought to enforce Plaintiff's rights pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").

2. Equifax, Experian and Trans Union are the three major consumer reporting agencies in the United States (hereinafter, Equifax, Experian and Trans Union are collectively referred to as the "CRAs").

3. The FCRA requires that CRAs follow reasonable procedures to ensure the maximum possible accuracy of the information that they report. 15 U.S.C. § 1681e(b).

4. When a consumer disputes information on their credit report, the CRAs must conduct a reasonable investigation of the dispute and, if the information is incorrect or cannot be verified, they must correct it or delete it.  15 U.S.C. § 1681i.

5. Additionally, when a consumer like Plaintiff disputes the accuracy of their information through the CRAs, those disputes must also be transmitted to the furnisher of that information, like Truist Bank in the present matter (hereinafter referred to as "Truist" or "Furnisher"), and the FCRA requires that the entity must also conduct a reasonable investigation of its own and correct or delete information it finds is inaccurate or cannot be verified.

6. Plaintiff brings claims under 15 U.S.C. § 1681e(b) against Experian, Equifax and Transunion because each reported inaccurate account information about Plaintiff regarding an inaccurate past due payment in connection with his Truist mortgage.  When Plaintiff disputed the

inaccuracy, Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation.

7.  Additionally, Plaintiff brings a claim against Truist under 15 U.S.C. § 1681s-2(b) for failing to conduct a reasonable investigation of his dispute, despite having acknowledged and communicated to Plaintiff that it furnished inaccurate information to the CRAs.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9.  Venue is proper in this District and Division pursuant to 28 U.S.C § 1391(b)(2), as Plaintiff resides in this District and Division and all relevant facts regarding his injuries occurred here.

## PARTIES

10.  Plaintiff is a natural person residing in the State of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

11.  Experian is a foreign corporation authorized to do business in the State of Virginia through its registered agent in Glenn Allen, Virginia.

12.  Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), as it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties in exchange for monetary compensation.

13.  Equifax is a foreign limited liability company authorized to do business in the State of Virginia through its registered agent in Richmond, Virginia.

14.  Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), as it is regularly engaged in the business of assembling, evaluating, and disbursing information

concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties in exchange for monetary compensation.

15.    Trans Union is a foreign limited liability company authorized to do business in the State of Virginia through its registered agent in Richmond, Virginia.

16.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), as it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties in exchange for monetary compensation.

17.    Truist is a foreign corporation authorized to do business in the State of Virginia through its registered agent in Richmond, Virginia.

18.    Truist is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

19.    On or about November 19, 2021, Plaintiff obtained a conventional real estate mortgage through Prosperity Home Mortgage, LLC, which subsequently transferred the mortgage to Truist[1], account number 942300XXXXXXXX (the "Mortgage").

20.    Monthly payments on the Mortgage were initially $1,406.63 ("Original Monthly Payment") and due on the first day of the month.

21.    Plaintiff set up ACH payments of the Original Monthly Payment to be made to Truist on the last day of the month preceding the due date.

---

[1] The tradeline for the Mortgage is sometimes listed in the exhibits to this complaint as "Truist Mortgage" but other times is listed as "SunTrust Bank." For clarity, both versions of the tradelines are hereinafter referred to as "Truist."

22.     By way of example, the Mortgage payment due on February 1, 2022 was paid via ACH on January 30, 2022, and the Mortgage payment due on March 1, 2022 was paid via ACH on February 28, 2022.

23.     On or about December 1, 2022, Truist increased the Original Monthly Payment to $1,569.96 ("New Monthly Payment").

24.     Unfortunately, Plaintiff was working out-of-town with his US Navy civilian employee job when notice of the New Monthly Payment was sent and did not know of the increase, resulting in his monthly payment for December 1, 2022 being $163.33 short.

25.     Fortunately, Plaintiff had structured his monthly Mortgage payments in a way that ensured that his payments would not be more than thirty days past due for at least several months.

26.     On or about March 1, 2023, Plaintiff received an alert from his credit monitoring service informing him that Truist was furnishing information to the CRAs that he was thirty days past due on his Mortgage and the CRAs were reporting this delinquency.

27.     This negative reporting caused his credit score to drop from a 750 to a 620.

28.     Furthermore, Plaintiff had just applied and interviewed for a position with a government agent a week prior to the negative reporting, and as a condition of employment, was required to submit to a background check.

29.     Plaintiff was required to supplement his application with an explanation letter after learning of the derogatory reporting.

30.     Plaintiff immediately contacted Truist by telephone in order to figure out why he was being reported as past due.

31.     The Truist representative informed him of the New Monthly Payment, but acknowledged that that his February 28, 2023 Mortgage payment had been misapplied and promised to correct his account and the information it furnished to the CRAs.

32.     Plaintiff updated his ACH payment to reflect the New Monthly Payment ("Updated ACH Payment") after the phone call with the Truist representative.

33.     On or about March 7, 2023, Plaintiff spoke to another Truist representative over the phone and per the representative's instructions, made a payment of $219.94 to make up the deficiency between the Original Monthly Payment and the New Monthly Payment.

34.     On or about March 10, 2023, Plaintiff spoke to yet another Truist representative over the phone, and per the representative's instructions, made an additional payment of $106.72 to make up an apparently remaining deficiency between the Original Monthly Payment and the New Monthly Payment.

35.     Soon thereafter, Plaintiff received a letter from Truist dated March 9, 2023 ("March 9, 2023 Truist Letter") which stated that a payment application had been completed and apologized "for any inconvenience this matter may have caused."   A copy of the March 9, 2023 Truist Letter is attached hereto as Exhibit A.

36.     After receiving the March 9, 2023 Truist Letter, Plaintiff was confident that the issue had been resolved.

37.     On March 15, 2023, Plaintiff received his Mortgage account statement ("March 2023 Statement") which contained no past due amounts and only listed the New Monthly Payment as due on April 1, 2023.  A copy of the March 2023 Statement is attached hereto as Exhibit B.

38.     After reviewing the March 2023 Statement, Plaintiff was even more confident that the issue had been resolved, but shortly thereafter his review, Plaintiff received another alert from

his credit monitoring service informing him that Truist was furnishing information to the CRAs that he was thirty days past due on his Mortgage and the CRAs were reporting this delinquency.

39.     Plaintiff would make a series of four phone calls to Truist to dispute the information that was being furnished to the CRAs, each time explaining the situation, the March 9, 2023 Truist Letter, and the March 2023 Statement.

40.     For each of these four phone calls to Truist, Plaintiff would later receive a response letter (collectively, "Truist Response Letters") in which Truist claimed that based on its investigation, "the disputed account information is accurate as reported and there are no changes necessary.  The information you are disputing was furnished correctly." Copies of the Truist Response Letters are attached hereto as Exhibit C.

41.     On March 30, 2023, the Updated ACH Payment was made to Truist for Plaintiff's April 2023 Mortgage payment.

42.      On April 1, 2023, Plaintiff filed a credit dispute with Equifax, confirmation number 3097591796 ("First Equifax Dispute").

43.     On April 19, 2023, Equifax responded to the First Dispute ("First Equifax Response") with several modifications to Plaintiff's credit report, most notably that there was no past due amount, no date of 1st delinquency, and a status of "Pays As Agreed." A copy of the First Equifax Response is attached hereto as Exhibit D.

44.     Plaintiff was once again confident that the issue had been resolved.

45.     Unfortunately, Plaintiff received yet another alert from his credit monitoring service informing him that Truist was still furnishing information that he was thirty days past due for March of 2023 and that the CRAs, including Equifax, were all reporting this delinquency.

46. Plaintiff again attempted to dispute the inaccurate information over the phone with Truist, only to receive a response letter from Truist dated August 16, 2023 ("Truist August 2023 Response"), which again stated that it had conducted an investigation and that the information being furnished was accurate. A copy of the Truist August 2023 Response is attached hereto as Exhibit E.

47. Plaintiff then hired a credit repair company named Credit Kwondo ("Credit Repair Company") to help resolve the issue, which cost $800.00.

48. On or about the September 5, 2023, the Credit Repair Company sent a letter to Truist disputing the negative credit information and asking that it correct the inaccurate information ("Credit Repair Letter").

49. Truist acknowledged receipt of the Credit Repair Letter on September 20, 2023 and provided a response on September 29, 2023 (collectively, "Truist Response to Credit Repair Letter"). A copy of the Truist Response to Credit Repair Letter is attached hereto as Exhibit F.

50. The Truist Response to the Credit Repair Letter yet again stated that Truist had conducted an investigation and that Plaintiff's information was being reported accurately.

51. The Truist Response to the Credit Repair Letter also enclosed the following documents: a copy of Plaintiff's Uniform Residential Loan Application, a copy of the underlying Note, a copy of the underlying Deed of Trust, a copy of the Truist August 2023 Response, and a copy of Plaintiff's Customer Account Activity Statement for the period of September 1, 2022 through September 20, 2023.

52. However, the Truist Response to the Credit Repair Letter failed to enclose the March 9, 2023 Truist Letter wherein Truist admitted its mistake and promised to correct it, the March 2023 Statement which contained no past due amounts and only listed the New Monthly

8

Payment as due on April 1, 2023, or any information related to the First Equifax Dispute and the First Equifax Response in which the inaccurate derogatory information was corrected.

53.     On March 12, 2024, Plaintiff sent a dispute letter to Equifax in which it disputed the derogatory information being furnished by Truist ("Second Equifax Dispute").  A copy of the Second Equifax Dispute is attached hereto as Exhibit G.

54.     Also on March 12, 2024, Plaintiff sent an almost identical dispute letter to Experian in which it disputed the derogatory information being furnished by Truist ("Experian Dispute"). A copy of the Experian Dispute is attached hereto as Exhibit H.

55.     Also on March 12, 204, Plaintiff sent an almost identical dispute letter to Trans Union in which it disputed the derogatory information being furnished by Truist ("Trans Union Dispute"). A copy of the Trans Union Dispute is attached hereto as Exhibit I.

56.     On dates better known to Equifax and Truist, Equifax provided the Second Equifax Dispute to Truist.

57.     On dates better known to Experian and Truist, Experian provided the Experian Dispute to Truist.

58.     On dates better known to Trans Union and Truist, Trans Union provided the Trans Union Dispute to Truist.

59.     On or about March 26, 2024, Trans Union provided a response to the Trans Union Dispute ("Trans Union Response") but failed to correct the inaccurate derogatory information.  A copy of the Trans Union Response is attached hereto as Exhibit J.

60.     On or about April 5, 2024, Experian provided a response to the Experian Dispute ("Experian Response") but failed to correct the inaccurate derogatory information.  A copy of the Experian Response is attached hereto as Exhibit K.

61.     On or about June 3, 2024, after initially declining to correct Plaintiff's credit reporting, Equifax sent a response letter to the Second Equifax Dispute ("Second Equifax Response") in which it corrected the derogatory information and reported Plaintiff's Truist account as having no past due amount, no date of 1st delinquency, and a status of "Pays As Agreed." A copy of the Second Equifax Response is attached hereto as Exhibit L.

62.     On or about July 31, 2024, Plaintiff obtained his credit report ("July 2024 Credit Report") which showed that the inaccurate derogatory information on his Truist tradeline had been corrected by Equifax, but that he was still being reported as thirty days late in March of 2023 by Experian and Trans Union. A copy of the July 2024 Credit Report is attached hereto as Exhibit M.

63.     Upon receipt of the disputes from Equifax, Experian, and Trans Union, Truist failed to reasonably reinvestigate Plaintiff's disputes in violation of 15 U.S.C. § 1681s-2(b)(1)(A).

64.     Truist's investigation was unreasonable because it ignored or failed to review March 9, 2023 Truist Letter wherein Truist admitted its mistake and promised to correct it, the March 2023 Statement which contained no past due amounts and only listed the New Monthly Payment as due on April 1, 2023, or any information related to the First Equifax Dispute and the First Equifax Response in which the inaccurate derogatory information was corrected.

65.     Truist also violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to correct, delete, or permanently block the account after receiving Plaintiff's disputes from Equifax, Experian, and Trans Union.

66.     Additionally, at no point did Truist ever furnish information to the CRAs that it Plaintiff disputed the derogatory information.

67.     Experian and Trans Union violated the FCRA by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of

Plaintiff's credit reports when they reported the inaccurate information and by failing to conduct a reasonable reinvestigation after receiving Plaintiff's disputes.

68.     Equifax violated the FCRA by continuing to report inaccurate credit information even after the First Equifax Dispute and First Equifax Response initially corrected the information, but to its credit, Equifax conducted a reasonable reinvestigation into Plaintiff's Second Equifax Dispute and corrected the inaccurate information and is now reporting correctly.

69.     Plaintiff took significant steps to resolve this matter with the defendants but has been mostly unsuccessful.

70.     Truist continues to furnish inaccurate information, and Experian and Transunion are still reporting the inaccurate information.

71.     Even with Equifax, Plaintiff remains in a constant state of fear that Equifax will once again start reporting the inaccurate information.

72.     As a result, Plaintiff has suffered damages, including but not limited to:

  a.   Stress associated with being denied credit and associated delays in applying for future lines of credit;

  b.   Stress associated with being denied employment with  a governmental agency as a result of a problematic background check;

  c.   Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes, hiring a Credit Repair Company;

  d.   Loss of time attempting to correct the inaccuracies;

  e.   Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to: anxiety, depression, loss of

appetite, loss of concentration, irritability, humiliation, embarrassment, sleep loss, harm to reputation, and loss of privacy.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)
*against Equifax, Experian, and Trans Union*

73. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

74. Equifax, Trans Union, and Experian each violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained concerning Plaintiff when they reported the inaccurate account information from Truist.

75. As a result of Equifax, Trans Union, and Experian's violations of 15 U.S.C. § 1681 e(b) Plaintiff suffered actual damages, including but not limited to: lost credit opportunities, time attempting to get the errors fixed, money spent on postage for dispute letters, money spent on the Credit Repair Company, anxiety, depression, loss of appetite, loss of concentration, aggravation of high blood pressure, irritability, humiliation and embarrassment, headaches, feelings of fear and panic, irritability, sleep loss, weight gain, harm to reputation, and loss of privacy.

76. Further, after Plaintiff's disputes put them on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Equifax, Trans Union, and Experian each ignored that information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

77. Equifax, Trans Union, and Experian each furnished multiple consumer reports to third

parties containing the inaccurate tradeline information and they did so after receiving notice of these inaccuracies.

78. The violations by Equifax, Trans Union and Experian were willful, rendering each of the CRAs individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

79. In the alternative, Equifax, Trans Union, and Experian were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

80. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax, Trans Union, and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § l68ln and § 1681o.

**COUNT II:**
**VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)**
*against Equifax, Experian, and Trans Union*

81. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

82. Equifax, Trans Union, and Experian each violated 15 U.S.C. § l68li(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of Plaintiff' credit files.

83. Equifax, Trans Union and Experian each violated 15 U.S.C. § l68li(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

84. Equifax, Trans Union, and Experian each violated 15 U.S.C. § l68li(a)(4) by failing to review and consider all relevant information submitted by Plaintiff as to the Furnisher account.

85. Equifax, Trans Union, and Experian each violated 15 U.S.C. § l68li(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

86. As a result of Equifax, Trans Union, and Experian's violations of 15 U.S.C. § l68li(a), Plaintiff suffered actual damages, including but not limited to: lost credit opportunities, time attempting to get the errors fixed, money spent on postage for dispute letters, money spent on the Credit Repair Company, anxiety, depression, loss of appetite, loss of concentration, aggravation of high blood pressure, irritability, humiliation and embarrassment, headaches, feelings of fear and panic, irritability, sleep loss, weight gain, harm to reputation, and loss of privacy.

87. The violations by Equifax, Trans Union and Experian were willful, rendering each of the CRA Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88. In the alternative, Equifax, Trans Union, and Experian were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

89. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax, Trans Union, and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT III:**
**VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(1)(A) & (B)**

*against Truist*

90. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

91. Truist violated 15 U.S.C. § 1681s-2(b)(I)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after his disputes were furnished directly to it by Equifax, Experian, and Trans Union.

92. Truist violated 15 U.S.C. § 168Is-2(b)(I)(B) by failing to review all relevant information provided when Equifax, Experian, and Trans Union forwarded Plaintiff's disputes to Truist.

93. As a result of Truist's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: lost credit opportunities, time attempting to get the errors fixed, money spent on postage for dispute letters, money spent on the Credit Repair Company, anxiety, depression, loss of appetite, loss of concentration, aggravation of high blood pressure, humiliation and embarrassment, headaches, feelings of fear and panic, irritability, sleep loss, weight gain, harm to reputation, and loss of privacy.

94. The violations by Truist were willful, rendering Truist liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95. In the alternative, Truist was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

96. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Truist in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT IV:**
**VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(1)(C), (D), &**
**(E)**
*against Truist*

97. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

98. On one or more occasions within the past two years, by example only and without

limitation, Truist violated 15 U.S.C. § 1681s-2(b)(I)(C), (D), and (E) by publishing the

inaccuracies within Plaintiff's credit files with Equifax, Experian, and Trans Uuion without also

including a notation that these debts were disputed and by failing to correctly report results of an

accurate investigation to Equifax, Experian, and Trans Union.

99. Plaintiff's disputes were, at a minimum, *bone fide*.

100.    Upon information and belief, Plaintiff alleges that the procedures followed

regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that Truist intended its

employees or agents to follow.

101.    Upon information and belief, Plaintiff alleges that Truist's employees or agents

did not make a mistake (in the way in which they followed Truist's procedures) when it received,

processed, and responded to the Equifax, Experian, and Trans Union ACDVs and did not include

the disputed status.

102.    Upon information and belief, Plaintiff alleges that Truist has not materially

changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of

its failures in this case.

103.    As a result of Truist's conduct, action, and inaction, Plaintiff suffered damage as

alleged above, including by example only and without limitation: lost credit opportunities, time attempting to get the errors fixed, money spent on postage for dispute letters, money spent on the Credit Repair Company, anxiety, depression, loss of appetite, loss of concentration, aggravation of high blood pressure, humiliation and embarrassment, headaches, feelings of fear and panic, irritability, sleep loss, weight gain, harm to reputation, and loss of privacy.

104.    The violations by Truist were willful, rendering Truist liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

105.    In the alternative, Truist was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

106.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Truist in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax, Experian, Trans Union, and Truist;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award such other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**MATTHEW A. COLLINS**

By: _____/s/ Ariel L. Stein_____
                    Of Counsel

Ariel L. Stein (VSB #84497)
Bischoff Martingayle P.C.
208 East Plume Street, Suite 247
Norfolk, VA 23510
Telephone: (757) 935-9194
Fax: (757) 440-3924
stein@bischoffmartingayle.com
*Counsel for Plaintiff*